IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| **MIRAMAR PETROLEUM, INC.** | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 6:15-CV-28 |
| | § | |
| **THE FIRST LIBERTY INSURANCE** | § | |
| **CORPORATION and COMMERCE** | § | |
| **& INDUSTRY INSURANCE** | § | |
| **COMPANY** | § | |

### DEFENDANT COMMERCE & INDUSTRY INSURANCE COMPANY'S RESPONSE TO PLAINTIFF MIRAMAR PETROLEUM, INC.'S MOTION FOR SUMMARY JUDGMENT

Commerce & Industry Insurance Company ("CIIC") files this Response to Plaintiff Miramar Petroleum, Inc.'s ("Miramar") Motion for Summary Judgment, respectfully showing this Honorable Court the following:

### I. Summary of Argument

Miramar sued First Liberty Insurance Corporation ("Liberty") and CIIC. Miramar alleges that it is an additional insured under a commercial general liability policy issued to Nicklos Drilling Company ("Nicklos") by Liberty. Miramar states in its petition that CIIC issued an umbrella policy to Nicklos and that Miramar included CIIC in the present lawsuit because Nicklos' claims against Miramar are likely to exceed the limits of the Liberty policy.

However, Miramar's claims against CIIC fail and it is not entitled to summary judgment because (1) Miramar is not an additional insured under CIIC's umbrella policy, (2) the claims asserted against Miramar in the underlying lawsuit do not allege covered damages in an amount within the layer of coverage provided by the CIIC policy; any supplementary payments for interest do not erode the limits of Liberty's commercial

general liability policy, and (3) CIIC has not violated the Texas Insurance Code's Prompt Payment statute because CIIC is not liable for Miramar's claims.

## II. Background

Miramar is an oil and gas exploration company that leased the mineral rights to property in Jackson County, Texas in order to drill a well. On March 6, 2013, Miramar and Nicklos entered into a Drilling Bid Proposal and Daywork Drilling Contract ("Drilling Contract") under which Nicklos agreed to drill the Sartwelle #1 well in Jackson County.[1] The Drilling Contract contains indemnity provisions and provides that the parties will procure "Commercial (or Comprehensive) General Liability Insurance" with a policy limit of $1,000,000.[2] It does not require umbrella insurance or liability coverage in excess of $1,000,000.[3]

Nicklos has a commercial general liability policy with Liberty, Policy No. TB6-641-444068-023, policy period March 1, 2013 to March 1, 2014, with an each occurrence limit of $1,000,000 ("the Liberty policy").[4] Nicklos also has a Commercial Umbrella Liability Policy with CIIC, policy number BE 013226405, policy period March 1, 2013 to March 1, 2014, for sums in excess of the Retained Limit that the Insured becomes legally obligated to pay as damages by reason of liability imposed by law because of Bodily Injury, Property Damage or Personal Injury and Advertising Injury to which this insurance applies (the "CIIC Policy").[5] The Retained Limit of the CIIC Policy is "the total applicable limits of Scheduled Underlying Insurance and any applicable Other

---

[1] *See* Drilling Contract attached to Pl.'s Mot. Summ. J., ECF No. 15, as Exhibit 4, and also attached to CIIC's Mot. Summ. J., ECF No. 14, as Exhibit 2.
[2] *Id*. at pp. 4, 7.
[3] *Id*.
[4] *See* Liberty's Commercial General Liability Policy attached as Exhibit 1 to Pl.'s Mot. Summ. J., and also attached to CIIC's Mot. Summ. J. as Exhibit 3.
[5] *See* CIIC's Policy attached to Pl.'s Mot. Summ. J. as Ex. 3, and also attached to CIIC's Mot. Summ. J. as Ex. 4.

2

Insurance providing coverage to the Insured."[6] The Schedule of Underlying Insurance includes the Liberty general liability policy with $1,000,000 per occurrence limits. The CIIC Policy applies only if the Bodily Injury, Property Damage or Personal Injury and Advertising Injury is caused by an Occurrence and the amount CIIC will pay is limited as described in Section IV. Limits of Insurance.[7]

Miramar alleges that on April 15, 2013, an incident occurred causing loss of the Sartwelle #1 well.[8] As a result, Miramar filed a lawsuit against American Drilling Fluid, Cimarron Engineering, LLC and Nicklos in the 267th Judicial District Court of Jackson County, Texas, Cause No. 13-6-14449, styled *Miramar Petroleum, Inc. v. American Petroleum Drilling Fluids, Inc. d/b/a American Drilling Fluids, Inc., et al.* ("Underlying Lawsuit").[9] In the Underlying Lawsuit, Miramar alleged breach of contract and sought damages for the cost to bring the Sartwelle #1 well under control, the cost to drill a replacement well, lost or delayed production and lost equipment. Nicklos filed counterclaims against Miramar seeking payment of unpaid invoices, foreclosure of lien, and damages for the loss of Nicklos' drill string trapped in the well.[10]

Miramar thereafter filed the instant lawsuit seeking insurance coverage for Nicklos' counterclaims for its lost drill pipe, unpaid invoices and attorney's fees.[11] In its motion for summary judgment, Miramar argues two issues that should be decided against CIIC.[12] It claims that Nicklos' claims for its lost drill pipe and other in-hole

---

[6] *Id.* at p. 27.
[7] *See* CIIC Policy attached to Pl.'s Mot. Summ. J. as Ex. 3, and also attached to CIIC's Mot. Summ. J. as Ex. 4.
[8] *See* Pl.'s Orig. Pet. at p. 3, para. 11, attached to CIIC's Mot. Summ. J. as Ex. 1.
[9] *See* Pl.'s Second Am. Pet. and Seventh Am. Pet. filed in the Underlying Lawsuit attached to CIIC's Mot. Summ. J. as Exs. 5 and 6.
[10] *See* Nicklos' Second Am. Answer and Counterclaim and Third Am. Answer and Counterclaim filed in the Underlying Lawsuit attached to CIIC's Mot. Summ. J. as Exs. 7 and 8, and also attached to Pl.'s Mot. Summ. J. as Ex. 2.
[11] *See* Pl.'s Orig. Pet. at p. 4, ECF No. 1-5.
[12] *See* Pl.'s Mot. Summ. J. at p. 2, ECF No. 15.

3

equipment are covered under the Liberty policy and, therefore, to the extent those claims exceed the Liberty policy, then the CIIC Policy provides coverage for the excess. Miramar also claims in its motion that CIIC violated the Texas Insurance Code by wrongfully refusing to defend Miramar.

### III. Argument and Authorities

CIIC incorporates its Motion for Summary Judgment, filed in this matter on October 16, 2015, by reference as if fully set forth herein. For the reasons therein and established below, Miramar's motion for summary judgment seeking coverage from CIIC should be denied and summary judgment should be granted in CIIC's favor.

**A. Summary Judgment Standard**

Summary judgment is proper where the evidence shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. *Looney Ricks Kiss Architects, Inc. v. State Farm Fire & Cas. Co.*, 677 F.3d 250, 255 (5th Cir. 2012); *Kee v. City of Rowlett*, 247 F.3d 206, 2010 (5th Cir. 2001).

**B. CIIC does not Provide Coverage to Miramar because Nicklos had no Obligation to Procure Umbrella Liability Coverage for Miramar**

Miramar contends in its motion that the Drilling Contract "has no limits on indemnification" or limits on "indemnity obligations" and that the indemnity agreements contained within paragraph 14 of the Drilling Contract "are 'without limit and without regard to cause.'"[13] Miramar appears to argue that the parties to the Drilling Contract are not limited to the $1,000,000 in commercial general liability insurance coverage they agreed to in the Drilling Contract. In support, Miramar points to subparagraph 14.13 of the Drilling Contract, which states in relevant part:

---

[13] *See* Pl.'s Mot. Summ. J. at pp. 22-23, ECF No. 15.

4

> 14.13  Indemnity Obligation:  Except as otherwise expressly limited in this Contract, it is the intent of parties hereto that all releases, indemnity obligations and/or liabilities assumed by such parties under terms of this Contract, including, without limitation, Subparagraphs 4.9 and 6.3(c), Paragraphs 10 and 12, and Subparagraphs 14.1 through 14.12 hereof, be without limit and without regard to the causes or causes thereof, including, but not limited to, pre-existing conditions, defect or ruin of premises or equipment, strict liability, regulatory or statutory liability, products liability, breach of representation or warranty (express or implied), breach of duty (whether statutory, contractual or otherwise) any theory of tort, breach of contract, fault, the negligence of any degree or character (regardless of whether such negligence is sole, joint or concurrent, active, passive or gross) of any party or parties, including the party seeking the benefit of the release, indemnity or assumption of liability or any other theory of legal liability….[14]

The language in this subparagraph appears to be meant to satisfy the Texas express negligence test.  It does not overcome the requirements of the Texas Oilfield Anti-Indemnity Act ("TOAIA"), nor expand the insurance coverage obligations the parties specifically agreed to in the contract. *See* TEX. CIV. PRAC. & REM. CODE §§ 127.001-127.007 (West 2015).  Indeed, in *Ironshore Specialty Ins. Co. v. Aspen Underwriting, Ltd.*, the Fifth Circuit notes that insurance coverage obligations may be separate and independent from indemnity obligations. 788 F.3d 456, 459 n.5 (5th Cir. 2015).  The Court further held that the TOAIA imposes statutory limits on indemnity obligations in the oilfield context – like this case, the "indemnity obligation is limited to the extent of the coverage and dollar limits of insurance or qualified self-insurance each party as indemnitor has agreed to obtain for the benefit of the other party as indemnitee." *Id.* (quoting TEX. CIV. PRAC. & REM. CODE § 127.005(b)).

Paragraph 13 of the Drilling Contract provides that Miramar and Nicklos will each maintain insurance coverage of the kind and in the amount set forth in Exhibit "A"

---

[14] *See* Ex. 4 of Pl.'s Mot. Summ. J. at p. 5, para. 14.13, the Drilling Contract.

of the Drilling Contract insuring the liabilities that each assumed in paragraph 14 for the benefit of the other:

> 13. INSURANCE
> During the life of this Contract, [Nicklos] shall at [Nicklos'] expense maintain, with an insurance company or companies authorized to do business in the state where the work is to be performed or through a self-insurance program, insurance coverage of the kind and in the amount set forth in Exhibit "A", insuring the liabilities specifically assumed by [Nicklos] in Paragraph 14 of the Contract… [Miramar] will, as well, cause its insurer to waive subrogation against [Nicklos] for liability it assumes and shall maintain, at [Miramar's] expense, or shall self insure, insurance coverage as set forth in Exhibit "A" of the same kind and in the same amount as is required of [Nicklos], insuring the liabilities specifically assumed by [Miramar] in Paragraph 14 of this Contract… [Miramar] and [Nicklos] shall cause their respective underwriters to name the other additionally insured but only to the exten[t] of the indemnification obligations assumed herein.[15]

Miramar and Nicklos' insurance coverage obligations are separate from the indemnity obligations. Further, Texas law limits the indemnity obligation, with respect to mutual indemnity, to the extent of coverage and limits of insurance each party agreed in the contract to obtain for the benefit of the other party. In this case, Exhibit "A" of the Drilling Contract requires Commercial (or Comprehensive) General Liability Insurance with limits of $1,000,000 combined single limit per occurrence; there is no agreement to provide umbrella liability insurance.[16]

Miramar's contention that it is not limited by the insurance obligations agreed in the Drilling Contract is contrary to Texas law. In Texas, an insurance policy can incorporate limitations on coverage contained in extrinsic documents by referencing those documents. *See In re Deepwater Horizon*, 13-0670, 2015 WL 674744, at *5 (Tex. Feb. 13, 2015). The policy language determines when an underlying contract controls

---

[15] *Id.* at p. 4.
[16] *Id.* at p. 7, Exhibit "A" of Drilling Contract at para. 3.

6

the extent and scope of coverage and the court refers to extrinsic documents to the extent required by the policy. *Id.* The Fifth Circuit holds that an Insured Contract policy provision can incorporate the insured contract's limitations on coverage. *Ironshore*, 788 F.3d at 460. The Court determined that an Insured Contract provision serves as an independent basis to consider an external contract. *Id.* In *Ironshore*, the insured contract provision required the consideration of the external contract, which provided for only five million dollars ($5,000,000) in coverage, effectively limiting coverage to five million dollars ($5,000,000). *Id.* In addition, where a policy contains an Insured Contract provision and explicitly limits coverage "to the minimum Limits of Insurance [the insured] agreed to procure in a written Insured Contract," the policy unambiguously incorporates the terms of the insured contract and limits coverage according to the contract's terms. *Id.* "By tying additional-insured coverage to the terms of an underlying agreement, the parties procure only the coverage the insured is contractually obligated to provide." *In re Deepwater Horizon*, 2015 WL 674744, at *5.

In *Ironshore*, the policy explicitly limited coverage to the minimum limits of insurance the insured agreed to procure in a written insured contract. 788 F.3d 456. The excess policies at issue provided coverage for a total of $50,000,000 per occurrence, however, the parties only agreed to procure $5,000,000 in the insured contract. *Id.* The court determined that the terms of the policy and the terms of the insured contract limited coverage to $5,000,000, the amount the insured was contractually obligated to procure. *Id.* at 461.

As in *Ironshore*, the terms of the Drilling Contract limit coverage, in this case to $1,000,000. Section VII. M. 7 of Endorsement 6, as well as Section IV. E. of the CIIC Policy explicitly limit coverage to "the lesser of the Limits of Insurance shown in Item 3.

7

of the Declarations or the minimum Limits of Insurance you agreed to procure in such written Insured Contract."[17] According to the Fifth Circuit, this language incorporates the Drilling Contract's terms, clearly limiting coverage to the amount the insured agreed to obtain. *See id.* at 460.

In the present case, the CIIC Policy incorporates the Drilling Contract and therefore requires consideration of the Drilling Contract to determine the existence of coverage. Under Endorsement No. 6 of the CIIC Policy, the Contractors' Limitation Endorsement, "Insured" includes entities "to whom [Nicklos is] obligated by a written Insured Contract to provide insurance such as is afforded by this policy . . . However . . . the most we will pay for damages under this policy on behalf of any person or organization to whom [Nicklos is] obligated by written Insured Contract to provide insurance such as is afforded by this endorsement is the lesser of the Limits of Insurance shown in Item 3 of the Declarations or the minimum Limits of Insurance you agreed to procure in such written Insured Contract".[18] Accordingly, under the express terms of the CIIC Policy, insured status and coverage hinge on the existence and terms of the underlying Drilling Contract. Therefore, the terms of the Drilling Contract must be considered and incorporated to determine the existence of additional insured coverage for Miramar. *Ironshore,* 788 F.3d at 456.

As mentioned earlier, under paragraph 13 of the Drilling Contract, Nicklos is obligated to provide "insurance coverages of the kind and in the amount set forth in Exhibit 'A', insuring the liabilities specifically assumed in Paragraph 14 of the

---

[17] *See* CIIC Policy at p. 8; *see also* CIIC Policy at p. 42, Endorsement No. 6.
[18] *See* CIIC Policy attached to Pl.'s Mot. Summ. J. as Ex. 3, Endorsement No. 6 at pp. 41-42; *see also* Section IV. E. of the CIIC Policy, at p. 8.

8

Contract."[19] Exhibit "A" of the Drilling Contract requires Commercial (or Comprehensive) General Liability Insurance with limits of $1,000,000 combined single limit per occurrence.[20] Nothing in Exhibit "A" or in the Drilling Contract requires or even mentions umbrella liability insurance. Section 3 of Exhibit "A" in the Drilling Contract provides a blank section in case the parties agree to procure other insurance but Miramar and Nicklos left this space blank.[21]

Consequently, Nicklos was not obligated to obtain umbrella liability coverage. Moreover, Nicklos was not obligated to obtain insurance in excess of $1,000,000 per occurrence. The CIIC Policy is an umbrella liability policy and its layer is excess of $1,000,000 per occurrence. Therefore, Nicklos was not obligated to procure insurance such as is provided under the CIIC Policy. The CIIC Policy provides additional insured coverage only when required by written contract, and under the Drilling Contract, Miramar and Nicklos did not contract for the type or amount of coverage provided by the CIIC Policy. Therefore, Miramar is not an additional insured under the CIIC Policy. Miramar is not entitled to summary judgment, but instead, its claims fail and summary judgment should be entered in favor of CIIC.

    **C. Miramar's Claims do not reach CIIC's Layer of Coverage; not only has the Liberty Policy not been Exhausted, but it will not be Exhausted**

Miramar asserts it is an additional insured under the Liberty policy and that the claims are *likely* to exceed the Liberty policy's $1,000,000 limit, and therefore CIIC should provide coverage for the excess. Liberty has filed its own motion for summary judgment demonstrating that Miramar is not an additional insured under the Liberty

---

[19] *See* Ex. 4 of Pl.'s Mot. Summ. J. at p. 4, the Drilling Contract.
[20] *Id*. at p. 7, Exhibit "A" of Drilling Contract at para. 3.
[21] *Id*.

9

policy because Nicklos did not agree in the Drilling Contract to procure insurance coverage for any of the counterclaims Nicklos has asserted against Miramar.[22] Regardless of Miramar's status as an additional insured, or entitlement to coverage, under the Liberty policy, the claims against Miramar do not reach CIIC's layer of coverage. An excess or umbrella insurer's duty to indemnify does not arise until the underlying insurance has been completely exhausted by claims insured under the excess policy. *Indem. Ins. Co. of N. Am. v. W & T Offshore, Inc.*, 756 F.3d 347, 354 (5th Cir. 2014); *Texas Employers Ins. v. Underwriting Members at Lloyd's*, 836 F. Supp. 398, 404, 407 (S.D. Tex. 1993). No duty to defend or indemnify will arise until the underlying coverage has been paid out. *Schneider Nat. Transp. v. Ford Motor Co.*, 280 F.3d 532, 538 (5th Cir. 2002).

    CIIC's Policy is an umbrella policy that applies only in excess of the Retained Limit and any applicable other insurance that has been exhausted by payment of loss covered by the policy. Retained limit means "the total applicable limits of Scheduled Underlying Insurance and any applicable Other Insurance providing coverage to the Insured."[23] Section IV. M. of the CIIC Policy states that no payment will be made unless and until "the total applicable limits of Scheduled Underlying Insurance have been exhausted by the payment of Loss to which this policy applies and any applicable, Other Insurance have been exhausted by the payment of the loss."[24] The Schedule of Underlying Insurance, includes a Liberty general liability policy with a $1,000,000 per occurrence limit.[25]

---

[22] *See* Liberty's Mot. Summ. J., ECF No. 16.
[23] *See* CIIC's Policy attached to Pl.'s Mot. Summ. J. as Ex. 3 at p. 27.
[24] *Id.* at p. 8.
[25] *Id.* at p. 29, Schedule of Underlying Insurance.

10

### 1. *The Liberty policy provides that interest payments do not erode the limits of insurance*

Miramar claims in its motion for summary judgment that Nicklos' claims against Miramar in the Underlying Lawsuit are "now not less than $1,129,146, an amount in excess of the Liberty Mutual policy's million dollar limit."[26] In reaching this figure, Miramar explains that Nicklos' counterclaims are valued at $729,376.94, it asserts that interest is being sought in the amount of $317,278.97, and it asserts that claimed attorney's fees are at least $71,550.[27] However, Miramar has incorrectly assumed that any interest owed on Nicklos' counterclaims erodes the Liberty policy's $1,000,000 limit. This is not the case. The Liberty policy unambiguously provides that supplementary payments, including interest, do not erode the Liberty policy's limits of insurance.

Section I of the Liberty policy provides for supplementary payments, including interest.[28] Under the Supplementary Payments clause of Section I of the Liberty policy, the policy states that:

> We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:
>
>     a.    All expenses we incur.
>
>     ...
>
>     f.    Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

---

[26] *See* Pl.'s Mot. Summ. J. at p. 21, ECF No. 15.
[27] *Id*. at p. 20-21.
[28] *See* Ex. 1 to Pl.'s Mot. Summ. J. at p. 17, Liberty's policy.

11

  g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.[29]

Thus, the Liberty policy provides that interest payments, along with any other supplementary payments, do not reduce the limits of insurance of the Liberty policy. *See W. Cas. & Sur. Co. v. Preis*, 695 S.W.2d 579, 587 (Tex. App.—Corpus Christi 1985, writ ref'd n.r.e.) (where a commercial general liability policy contained a supplementary payment clause requiring insurer to pay interest, court held that first insurer has obligation to pay accruing interest even if a judgment exceeds first insurer's policy limits and another insurer contributes to judgment). Here, Liberty's supplementary payments clause specifically states that prejudgment and post-judgment interest do not erode the policy limits. Accordingly, the payment of any interest by Liberty would not reduce the available limits of the Liberty policy. Therefore, by the express terms of the policy, the $317,279.97 for interest asserted by Miramar cannot be used to implicate CIIC's layer.

Consequently, the damages claimed by Nicklos against Miramar do not implicate CIIC's layer. Therefore, CIIC has no obligation to Miramar.

### 2. *Nicklos' Counterclaims against Miramar do not allege covered damages in excess of the Liberty policy's $1,000,000 limits*

The actual alleged damages that would have potential to exhaust the limits of the Liberty policy, if covered, do not exceed $1,000,000 and do not implicate CIIC's layer of coverage. Miramar acknowledges in its motion for summary judgment that Nicklos' counterclaims are valued at only $729,376.94.[30] Indeed, Nicklos filed counterclaims

---

[29] *Id.*
[30] *See* Pl.'s Mot. Summ. J. at p. 20, ECF No. 15.

against Miramar for Nicklos' lost drill pipe, unpaid invoices and attorney's fees in the Underlying Lawsuit and is claiming damages in the amount of $729,376.94.[31] Of the $729,376.94 claimed by Nicklos, $485,283.90 is for the lost drill string (drill pipe, collars and subs); $1,580.45 is for equipment rental on April 1, 2013, prior to the April 15, 2013 incident; $241,500 is for daywork, at $14,000 per day, performed between April 1 and April 19, 2013, approximately $190,000 of which was performed prior to the April 15, 2013 incident; $156.83 is for fuel from April 1 to April 20, 2013; and $855.76 is for equipment rental after the incident.[32] These amounts are well short of the Liberty policy's limits of insurance, and thus, Nicklos' claims do not implicate CIIC's layer.

Further, Nicklos was not obligated to procure insurance for Miramar for lost drill string and, in fact, it is specifically excluded by the CIIC Policy.[33] Paragraph 13 of the Drilling Contract requires Nicklos to name Miramar as an additional insured for "the liabilities specifically assumed in Paragraph 14 of the Contract . . . only to the extent of the indemnification obligations assumed" in the Drilling Contract.[34] Paragraph 14.2 of the Drilling Contract specifically states that in regards to Nicklos' in-hole equipment, "[Miramar] shall assume all liability at all times for damage to or destruction of [Nicklos'] in hole-equipment, including, but not limited to, drill pipe, drill collars, and tool joints, and [Miramar] shall reimburse [Nicklos] for the value of any such loss or damage."[35] Miramar concedes in its motion that it agreed to assume the liability for Nicklos' in-hole equipment, including drill pipe, drill collars, and subs and that it "is

---

[31] *See* Plaintiff Miramar's Rule 26a Initial Disclosures at p. 4, attached to CIIC's Mot. Summ. J. as Exhibit 12.
[32] *See* Documents bate stamped MPI 0022 – MPI 0045, attached to CIIC's Mot. Summ. J. as Exhibit 13, produced by Miramar and referenced in its Rule 26a Initial Disclosures.
[33] *See* CIIC Policy attached to Pl.'s Mot. Summ. J. as Ex. 3, Endorsement No. 25.
[34] *See* Ex. 4 of Pl.'s Mot. Summ. J. at p. 4, para. 13, the Drilling Contract.
[35] *Id*. at p. 4, para. 14.2.

13

responsible for Nicklos' stuck drill pipe".[36]  However, in its quest for insurance coverage, Miramar ignores the fact that the Drilling Contract requires Miramar to be named as an additional insured only to the extent of the indemnification obligations assumed in the Drilling Contract.  As Miramar concedes, under the Drilling Contract, Nicklos did not assume liability for lost drill pipe; rather Miramar expressly assumed liability for lost drill pipe.  Accordingly, Nicklos had no obligation to name Miramar as an additional insured for its lost drill string because the Drilling Contract does not require Nicklos to indemnify Miramar for Nicklos' lost drill pipe or drill string.

Even if Nicklos had assumed liability for lost drill pipe in the Drilling Contract, the CIIC Policy's Oil Industries Endorsement explicitly excludes coverage for lost drill pipe damages.  Subparagraph 1 of Endorsement 25 of the CIIC Umbrella Policy states that the insurance does not apply to "loss of hole and any in-hole equipment, including fishing costs."[37]  The plain language of subparagraph 1 excludes coverage for loss of any in-hole equipment, which is precisely the $485,283.90 in damages that Nicklos is seeking from Miramar for its lost drill string.  Accordingly, the CIIC Policy explicitly excludes coverage for loss of in hole-equipment, which includes the lost drill string, and therefore, $485,283.90 of the $729,376.94 in claimed damages is specifically excluded from coverage.

The remaining $244,093.04 in damages claimed by Nicklos does not constitute property damage caused by an occurrence as all but about $60,000 are invoices for goods and services provided prior to the incident.  Consequently, even if Miramar were an additional insured under the CIIC Policy, which it is not, the claims against it would

---

[36] *See* Pl.'s Mot. Summ. J., ECF No. 15, at p. 16, para. 27; p. 18, para. 31; and p. 20, para. 39.
[37] *See* CIIC Policy attached to Pl.'s Mot. Summ. J. as Ex. 3 at p. 69, Endorsement 25.

still not reach CIIC's layer of coverage. The pre-incident goods and services invoiced by Nicklos are not Bodily Injury, Property Damage or Personal Injury and Advertising Injury and, as they were incurred pre-incident, they were not caused by an occurrence. Unpaid invoices for daywork services, fuel and equipment rental are instead a contractual dispute. Even assuming for the sake of argument that the invoices were for damages caused by an occurrence, they would not implicate CIIC's umbrella layer. Therefore, the CIIC Policy does not provide coverage to Miramar and CIIC has no obligation to Miramar.

### D. CIIC has not Violated the Texas Insurance Code because it has no Obligation to Miramar

Miramar asserts in its motion that it is covered by the CIIC Policy and CIIC wrongfully refused to defend. However, as an excess insurer, CIIC has no duty to defend. *Schneider Nat. Transp. v. Ford Motor Co.*, 280 F.3d 532, 538 (5th Cir. 2002). Moreover, CIIC is not liable under the Prompt Payment of Claims Act because, as explained above, the CIIC Policy does not provide coverage for Miramar's claims. An insurer cannot be liable for violating the Prompt Payment of Claims Act when the policy does not cover the underlying insurance claims. *Metro Hospitality Partners, Ltd. v. Lexington Ins. Co.*, 84 F. Supp. 3d 553, 571 (S.D. Tex. 2015). "If the insurer is not liable for a claim, a Plaintiff is not entitled to the statutory penalty for late payment even if the insurer failed to comply with statutory deadlines." *Philadelphia Indem. Ins. Co. v. C.R.E.S. Mgmt., L.L.C.*, CIV. A. H-09-1032, 2009 WL 5061805, at *3 (S.D. Tex. Dec. 15, 2009).

Texas law dictates that primary policies' limits must be exhausted before excess insurers become liable. *St. Paul Mercury Ins. Co. v. Lexington Ins. Co.*, 78 F.3d 202,

15

209 (5th Cir. 1996). Texas state and federal courts have repeatedly reiterated this principle. *See Utica Nat'l Ins. Co. v. Fidelity & Casualty Co.*, 812 S.W.2d 656, 661 (Tex. App.—Dallas 1991, writ denied) ("where an umbrella policy provides coverage for a loss in excess of the underlying policies listed in its schedule and in excess of the applicable limits of any other underlying insurance collectible by the insured, all such other collectible insurance must be exhausted before liability attaches under the umbrella policy"); *RLI Ins. Co. v. Phila. Indem. Ins. Co.*, 421 F.Supp.2d 956, 967 (N.D.Tex. 2006) (RLI's excess policy issued to the insured applied excess of two underlying policies, and its policy was not triggered until the limits of both were exhausted); *United States Fid. & Guar. Co. v. Coastal Ref. & Mktg.*, 369 S.W.3d 559, 569 (Tex. App.—Houston [14th Dist.] 2012, no pet.) ("excess insurers do not contribute until the primary policies are exhausted"). Miramar alleges in the present action that it only includes CIIC because it believes Nicklos' counterclaims will exceed the Liberty policy. However, CIIC is not liable under the policy until the underlying insurer is obligated to pay the limits of the scheduled underlying insurance, which has not occurred.

CIIC cannot be liable under the Prompt Payment of Claims Act for uncovered claims. As established, Miramar is not entitled to additional insured coverage under the CIIC Policy. Further, the scheduled underlying insurance has not been exhausted. For these reasons, Miramar's Texas Insurance Code violation claims against CIIC fail as a matter of law and Miramar is not entitled to the relief it seeks in this lawsuit.

## IV. Conclusion and Prayer

Miramar is not entitled to the relief it seeks. For the reasons discussed above and in CIIC's Motion for Summary Judgment, CIIC respectfully asks the Court to deny Miramar's Motion for Summary Judgment and grant CIIC's motion.

WHEREFORE PREMISES CONSIDERED, Commerce & Industry Insurance Company respectfully requests that this Honorable Court deny Miramar Petroleum, Inc.'s motion for summary judgment and grant summary judgment against all claims made by Miramar against CIIC, enter summary judgment dismissing Miramar's claims against CIIC with prejudice, and award all other relief to which CIIC is justly entitled.

RESPECTFULLY SUBMITTED, this the 6th day of November, 2015.

**BROWN SIMS, P.C.**

By: /s/ *Mark C. Clemer*
Mark C. Clemer
Attorney-in-Charge
Texas Bar No. 04372300
Federal ID. No. 7662
1177 West Loop South, Tenth Floor
Houston, Texas  77027-9007
Telephone: (713) 629-1580
Facsimile: (713) 629-5027
*mclemer@brownsims.com*
**COUNSEL FOR DEFENDANT
COMMERCE & INDUSTRY
INSURANCE COMPANY**

**Of Counsel:**

James D. "J.D." Johnson
BROWN SIMS, P.C.
Texas Bar No. 24085918
S.D. Tex. Bar No. 2218215
1177 West Loop South
Tenth Floor
Houston, Texas  77027-9007
Telephone: (713) 629-1580
Facsimile: (713) 629-5027
*jjohnson@brownsims.com*

## **CERTIFICATE OF SERVICE**

      I, the undersigned, hereby certify that I have electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to the following counsel of record on this the 6th day of November, 2015:

| | |
|---|---|
| William M. Clanton | Catherine L. Hanna |
| LAW OFFICE OF BILL CLANTON, P.C. | HANNA & PLAUT, L.L.P. |
| 926 Chulie Drive | Southwest Tower |
| San Antonio, Texas 78216 | 211 East 7th Street, Suite 600 |
| Phone: (210) 226-0800 | Austin, Texas 78701 |
| Facsimile: (210) 338-8660 | Phone: (512) 472-7700 |
| *bill@clantonlawoffice.com* | Fax: (512) 472-0205 |
| | *Channa@hannaplaut.com* |

                                  */s/ James D. Johnson*
                                  James D. "J.D." Johnson